IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA BAPTIE, | ) | CASE NO. 1:25-cv-01509-RJS |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| v. | ) | |
| | ) | |
| FRANK BISIGNANO, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security | ) | **AND ORDER** |
| Defendant. | ) | |

## I.      Introduction

Plaintiff Patricia Baptie ("Baptie") seeks judicial review of the final decision of the

Commissioner of Social Security, denying her application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C.

§§ 405(g), and 1383(c)(3). The parties consented to the jurisdiction of the magistrate judge

pursuant to 28 U.S.C. § 636(c)(1). (ECF Doc. 6). Because the Administrative Law Judge

("ALJ") applied proper legal standards, I recommend that the Commissioner's final decision

denying Baptie's DIB be affirmed.

## II.     Procedural History

Baptie protectively filed for DIB in January 23, 2023, alleging a disability onset date of

January 13, 2022. (Tr. 145).[1] The claims were denied initially and on reconsideration. (Tr. 55,

65). Baptie then requested a hearing before an ALJ. (Tr. 90). Baptie, represented by counsel, and

a Vocational Expert ("VE") testified before an ALJ on August 28, 2024. (Tr. 34-54). On

---

[1] In Baptie's application for DIB, she alleged an onset date of January 13, 2022, while the alleged onset date is written as January 13, 2023 in her Disability Determinations and Transmittals. (*Compare* Tr. 145 *with* Tr. 55, 65). As the ALJ and both parties to the case have referred to the alleged onset date as January 13, 2023, I do so as well.

1

September 19, 2024, the ALJ issued a written decision finding Baptie not disabled. (Tr. 14-29). The Appeals Council denied her request for review on May 29, 2025, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; see 20 C.F.R. §§ 404.955, 404.981). Baptie timely filed this action on July 19, 2025. (ECF Doc. 1).

### III.    Evidence

#### A.    Personal, Educational, and Vocational Evidence

Baptie was born on September 13, 1963, and was 59 years old on her alleged onset date, making her an individual of advanced age according to agency regulations. (Tr. 145). She has at least a high school education. (Tr. 373). She has past relevant work as an administrative assistant, DOT #169.167-010, both generally and actually performed at the sedentary exertional level, with an SVP of two, and as a case manager, DOT #195.107-030, generally performed at the sedentary exertional level, actually performed at medium, with an SVP of seven. (Tr. 51).

#### B.    Relevant Medical Evidence

The medical records show that Baptie had undergone an anterior C5-6 discectomy and arthroplasty, and a C6-7 anterior discectomy, osteophyte removal and interbody fusion on June 12, 2019. (Tr. 324). On June 9, 2020, one year post-surgery, Baptie reported her neck was doing "ok," and other than occasional aching she was overall well. (Tr. 336). A lumbar MRI on September 29, 2020 showed mild degeneration of the L3-4 disc and mild bilateral facet osteoarthropathy at L4-5 and L5-S1. (Tr. 340).

On September 23, 2021, Baptie reported pain radiating into both legs, becoming progressively worse since she had taken a job as a server/dishwasher. (Tr. 347). She was experiencing occasional numbness in her feet, although her doctor did not believe that was due to radiculopathy. (*Id.*). Her doctor noted that her diabetes was "poorly controlled," and

2

recommended against injections, instead suggesting Baptie treat her back pain with Meloxicam and by wearing a back brace. (*Id.*).

Bapties attended an office visit with APRN Amanda Willis on May 25, 2022, who assessed her with diabetes mellitus, type II; hypertension; hyperlipidemia; asthma; migraines with aura; and obstructive sleep apnea. (Tr. 296). Baptie indicated she could climb two flights of stairs without shortness of breath, and that she was taking metformin daily. (*Id.*).

On October 12, 2022, Baptie was involved in a motor vehicle accident, and reported cervical spasms and pain with decreased range of motion. (Tr. 349). Examination by Michael Kellis, D.O. revealed multiple myofascial trigger points along the cervical and lumbar spine, with pain in the thoracic spine. (*Id.*). There were also paravertebral spasms along the right latissimus dorsi. (*Id.*). Dr. Kellis recommended that she begin physical therapy and a home stretching program. (*Id.*). She attended a physical therapy evaluation on October 24, 2022 (Tr. 352).

At a November 17, 2022 office visit Baptie reported that she was not following a diabetic diet nor checking her blood sugar daily, and denied wheezing, shortness of breath or asthma exacerbations. (Tr. 318). On November 29, 2022, Baptie attended an office visit with Dr. Kellis and reported she was having quite a bit of neck pain, and she was experiencing spasms when she worked at her computer for extended periods. (Tr. 351). Dr. Kellis noted that previous x-rays revealed the bignnings of disc degeneration above her cervical fusion at C6-7, which is where she was experiencing discomfort. (Tr. 361). Examination notes indicate that she feels pain when looking down or with bilateral rotation or side bending, and document axial compression of her spine that causes her discomfort. (*Id.*).

3

On October 16, 2023, Baptie attended an office visit with APRN Kristie Tincher. (Tr. 380). APRN Tincher noted that Baptie's asthma had improved with the introduction of Singulair, and that she was rarely using his albuterol inhaler. (*Id.*). APRN Tincher also noted that her A1c was recorded at 6.9%, and she was seeing improvement due to increased exercise and a better diet. (*Id.*).

At an office visit with Dr. Kellis on April 4, 2024, Baptie complained of numbness and tingling in her bilateral ring fingers and pinkies, with pain in her wrists and the CMC joints in her thumbs. (Tr. 466). Dr. Kellis noted full strength in her hands, although she has difficulty opening jars. (*Id.*). Examination revealed swelling and sensitivity in both wirsts and around the CMC joint, raising concern about ulnar neuritis and radiculopathy. (*Id.*). There were "equivocal" Spurling signs, and Dr. Kellis further noted sensitivity to the cervical paravertebrals and the right trapezius muscle. (*Id.*). Dr. Kellis assessed cervical disc degeneration, cervical radiculopathy and ulnar neuritis. (*Id.*). On April 10, 2024, EMG testing showed acute/chronic nerve root lesion at the C5-6 nerve root with moderate median nerve neuropathy/entrapment at or about the right wrist and mild median nerve neuropathy/entrapment at or about the left wrist. (Tr. 473). Examination notes from that day indicated pain in the hands typically at 4-5/10, rising up to 7/10, with the pain aggravated by repetitive motion, excessive use, prolonged activity and computer work. (*Id.*). Baptie was assessed with cervical radiculopathy and right carpal tunnel syndrome. (*Id.*).

### C. Medical Opinion Evidence

#### 1. State Agency Reviewing Opinion Evidence

On April 24, 2023, state agency reviewing physician Johnny Craig, M.D., opined that Baptie could perform work at the light exertional level, but was limited to four hours

standing/walking during an eight-hour workday; she was able to frequently climb ramps or stairs, but could never climb ladders, ropes or scaffolds; she was able to occasionally stoop or crawl; she was required to avoid even moderate exposure to dust, odors, fumes, gases or poor ventilation; and must avoid all exposure to unprotected heights, hazardous machinery or commercial driving. (Tr. 61-62). At reconsideration, Gerald Klyop, M.D., affirmed Dr. Craig's opinion. (Tr. 71-73).

On August 15, 2023, Robyn Murry-Hoffman, Psy.D., determined that Baptie had no limitation in understanding, remembering, and applying instruction, or in interacting with others. (Tr. 59). She found Baptie had only mild limitations in concentration, persistence, and maintaining pace, and in adapting and managing oneself. (*Id.*). Jennifer Swain, Psy.D. affirmed Dr. Murry-Hoffman's opinion on reconsideration. (Tr. 70).

### 2. Consultative Examiner Opinion Evidence

On June 26, 2023, Hugh Turner, Psy.D. conducted a psychological consultative examination of Baptie. (Tr. 372-78). Dr. Turner diagnosed Baptie with an Adjustment Disorder with mixed anxiety and depressed mood, and opined that she had no functional psychological limitations. (*Id.*)

### 3. Medical Source Statements

On April 29, 2024, Dr. Kellis submitted a medical source statement, opining that Baptie was limited to occasionally lifting five pounds; she was limited to 1-2 hours of sitting/standing/walking in a workday, with no more than one hour continuously in any one posture; she was rarely able to balance or stoop, and could never climb, crouch, kneel or crawl; she could occasionally reach or push/pull, but rarely handle or finger due to "advanced carpal tunnel syndrome"; she had environmental restrictions on heights, moving machinery,

temperature extremes, pulmonary irritants or noise; she was presecribed a brace, a TENS unit, a breathing machine and oxygen; she required the ability to alternate between sitting and standing at will; her severe pain affects her ability to concentrate, her time off-task, and her absenteeism; she needs to elevate her legs to 45 degrees; and requires 1-2 hours additional rest time every workday. (Tr. 392-93).

### D. Administrative Hearing Evidence

Baptie testified before an ALJ on August 28, 2024. (Tr. 43-54). She testified that she stopped working in January,2023, because she was unable to sit, type or work on a computer for extended periods due to pain in her hands, the left side of her neck, and her left shoulder and arm. (Tr. 43). When she would take a break from from computer work and walk somewhere, she would have pain in her back and feet. (*Id.*). The pain would also wake her up at night. (*Id.*). As she was not sleeping well at night she would often have trouble staying awake at work and would have to take naps in her car during her lunch break. (Tr. 43-44). After she did not find relief from physical therapy her doctor recommended that she retire. (Tr. 44).

Baptie stated that her doctor told her that there were no more surgeries that would help alleviate her symptoms, and he could not give her injections because of her diabetes. (*Id.*). The only relief she gets is when she gets into "a position of comfort" such as lying down or reclining. (Tr. 44-45). Any time she stands, her lower back hurts, but if she sits with her feet on the ground the left side of her neck hurts and radiates pain to her left elbow and wrist. (Tr. 45). If she tries to type or drive, her hands will go numb. (*Id.*).

Under questioning by her attorney, Baptie testified that her right hand pain had been a problem for some time. (Tr. 48). She was also having pain in her left hand that was affecting her grip and her ability to open jars. (*Id.*). Even though she was resistant to having an EMG because,

6

as a physical therapist, she did not believe she had carpal tunnel syndrome, the EMG revealed that she did. (*Id.*). She currently does exercises to try to address her carpal tunnel syndrome and wears a brace on her left hand at night. (Tr. 49). She cannot do any exercise because of her asthma, and she does not sleep well because of her obstructive sleep apnea. (Tr. 49-50). She gave up other sports about ten years ago because of her heel spurs. (Tr. 50).

Once Baptie's testimony was complete, VE William Cody next testified. (Tr. 50-54). He classified Baptie's past work as administrative assistant, DOT #169.167-010, sedentary, with an SVP of 2, and case manager, DOT #195.107-030, generally performed at sedentary but actually performed at medium, with an SVP of 7. (Tr. 51). For her first hypothetical, the ALJ asked the VE to consider an individual of the who can lift and carry 10 pounds frequently and 20 pounds occasionally; who can stand or walk 4 hours; who can never climb ladders, ropes or scaffolds; who can frequently climb ramps or stairs; who can occasionally stoop or crawl; who must avoid tasks that occasionally expose one to respiratory irritants; who must avoid all exposure to dangerous moving machinery or tools such as power saws and jack hammers; who must not work at unprotected heights or work in commercial driving; and who is limited to frequent reaching, handling or fingering. (*Id.*). The VE opined that this individual could perform Baptie's past work as an administrative assistant as generally and actually performed, and as a case manager as generally performed. (Tr. 51-52).

Baptie's attorney then asked the VE to consider the same individual, but reduced the exertional level to sedentary, and reduced the frequency of reaching, handling or fingering to occasional. She also limited the individual occasional feeling or pushing/pulling. (Tr. 52). The VE opined that this individual could not perform Baptie's past work, nor was there other work in the national economy the individual could perform. (*Id.*). Baptie's attorney then proposed a

second hypothetical asking the VE to presume that the individual in question was now returned to frequent use of the upper extremities while remaining at the sedentary exertional level, and that the individual would further require an at-will sit/stand option, and could not turn left to right or hold her neck in a downward looking position as if they were at a desk, on a keyboard or doing paperwork for more than 10 minutes at a time. (*Id.*). The VE opined that this individual would be unable to perform any work as this limitation would cause the individual to be off-task more than 15% of the workday which would be intolerable to employers. (Tr. 53).

## IV.     The ALJ's Decision

In her decision dated September 19, 2024, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2028.

2.    The claimant has not engaged in substantial gainful activity since January 13, 2023, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease of the cervical spine status post diskectomy and fusion surgery in June 2019, osteoarthritis in the lumbar spine, heel spur, diabetes mellitus type 2, obstructive sleep apnea, asthma, moderate median nerve neuropathy/entrapment at or about the right wrist, and mild median nerve neuropathy/entrapment at or about the left wrist (20 CFR 404.1520(C) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand or walk 4 hours of an 8-hour workday; never climb ladders, ropes or scaffolds; frequently climb ramps and stairs; occasionally stoop and occasionally crawl; avoid work tasks that occasionally expose one to respiratory irritants and avoid all exposure to dangerous moving machinery or tools such as power saws and jack

8

hammers; no work at unprotected and no commercial driving; and frequent reaching, handling or fingering.

6.	The claimant is capable of performing past relevant work as a case manager and administrative assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.	The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2023 through the date of this decision (20 CFR 404.1520(g).

(Tr. 14-29).

## V.	Law and Analysis

### A.	Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1.	whether the claimant is engaged in substantial gainful activity;

2.	if not, whether the claimant has a severe impairment or combination of impairments;

3.	if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.	if not, whether the claimant can perform their past relevant work in light of his RFC; and

5.	if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[2]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant

---

[2] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

> **B.  Standard of Review**

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error

prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## VI.      Discussion

Baptie raises two issues for this Court's review:

1.      Whether the ALJ committed reversible error when she failed to recognize and evaluate all of the opinion evidence provided by Dr. Kellis and Ms. Baptie's physical therapist.

2.      Whether the ALJ's residual functional capacity was in error as she relied on reviewing opinions that did have access to key medical opinions, EMG results and physical therapy reports rather than the evidence as a whole, including the opinions of Dr. Kellis and plaintiff's physical therapist.

(ECF Doc. 8, p. 1).

### A.      The ALJ properly evaluated the opinion of Dr. Kellis.

Baptie argues that the ALJ failed to properly evaluate the medical opinions of Dr. Kellis. (*Id.*, at p. 10). In Baptie's view, the ALJ considered only selective portions of the record, rather than the record as a whole, when rejecting the opinions of medical sources. (*Id.* at p. 11). Baptie asserts that the record contains multiple medical opinions which provide substantial evidence showing that she is incapable of performing light work as suggested by the ALJ's RFC. (*Id.*). Baptie specifically points to several office visits with Dr. Kellis where he concluded that Baptie

11

was a candidate for disability due to her medical issues. (*Id.* at p. 13). Baptie contends that the ALJ failed to assess these opinions, focusing instead only on Dr. Kellis' physical capacity statement issued on April 29, 2024. (*Id.* at p. 14). Further, Baptie claims the ALJ's determination that Dr. Kellis' opinion was unpersuasive was improper, as it failed to account for how the opinion was supported by other opinions he rendered. (*Id.* at p. 15).

The Commissioner respomds by highlighting the ALJ's fulsome discussion of the medical evidence in the record. (ECF Doc. 9, pp. 8-11). The Commissioner further argues that the ALJ properly considered the supportability and consistency factors when determining that Dr. Kellis' opinion was unpersuasive. (*Id.* at pp. 11-12). The Commissioner contends that although the ALJ did not find that Dr. Kellis' opinion was inherently deficient because it was rendered in checkbox form, that still provides support for the ALJ's determination the opinion was unpersuasive. (*Id.* at p. 12). In the Commissioner's view, it was unnecessary for the ALJ to separately evaluate each of Dr. Kellis' opinions. (*Id.* at p. 13). Rather, it was satisfactory to find the opinions collectively unpersuasive without providing articulation about evidence that is "inherently neither valuable nor persuasive," including statements on issues reserved to the Commissioner such as describing Baptie as "a good candidate for disability." (*Id.*).

The evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. This regulation mandates that the ALJ "will not defer or give any evidentiary weight, including controlling weight to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must evaluate each medical opinion's persuasiveness based on its: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and, (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *see also Heather B. v. Comm'r of Soc. Sec.,* No. 3:20-cv-442, 2022 WL 3445856

(S.D. Ohio Aug. 17, 2022). Supportability and consistency are the most important factors; ALJs must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in [their] determination or decision." 20 C.F.R. § 404.1520c(b)(2). ALJs "may, but are not required to," consider factors three through five when evaluating medical source opinions. (*Id.*).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and non-medical sources in the claim, the more persuasive the medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(2).

An ALJ must "provide a coherent explanation of his [or her] reasoning. *Lester v. Saul*, No. 5:20-cv-01364, 20 WL 8093313 at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom., Lester v. Comm'r of Soc. Sec.,* No. 5:20-cv-01364. 2021 WL 119287 (N.D Ohio, Jan. 13, 2021). The ALJ's medical source opinion evaluation must contain a "minimum level of articulation" to "provide sufficient rationale for a reviewing adjudicator or court." *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 2017 WL 168819, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017). If an ALJ does not "meet these minimum levels of articulation," it "frustrates this [C]ourt's ability to determine whether her disability determination was supported by substantial evidence." *Heather B.*, 2022 WL 3445856, at *3, *citing Warren I. v. Comm'r of Soc. Sec.,* No. 5:20-cv-495, 2021 WL 860506, at *8 (N.D.N.Y., Mar. 8, 2021).

The ALJ summarized Dr. Kellis' opinion as follows:

On April 29, 2024, Michael Kellis, DO, completed a form about the claimant's physical capabilities. Dr. Kellis expressed the following medical opinion: (1) The

claimant can lift/carry 5 pounds occasionally and frequently lift/carry no pounds due to lumbar degenerative discs in the neck and back and heel spurs; (2) The claimant can stand/walk for one to two hours total of an 8-hour workday due to heel spurs, lumbar degeneration, and facet arthropathy; (3) The claimant can sit for one to two hours total of an 8-hour workday due to lumbar and cervical degeneration and disc disease; (4) The claimant can perform postural activities ranging from "never" to "rarely"; (5) The claimant can occasionally reach and push/pull and "rarely" perform fine or gross manipulation due to carpal tunnel syndrome, advanced; (6) The claimant needs to alternate positions "at will"; (7) The claimant's severe pain interferes with concentration, takes her off task, and causes absenteeism; (8) The claimant needs to elevate her legs 45-degrees "at will"; and (9) The claimant will require an additional unscheduled rest period of one to two hours on an average workday.

(Tr. 25)

The ALJ provided ample discussion of how he determined that Dr. Kellis' opinion was unpersuasive. The ALJ addressed the critical factors of supportability and consistency, writing that Dr. Kellis "failed to provide sufficient support for such severe and extreme limitations" and that the opinion was "not consistent with the limited course of treatment for any medically determinable impairment." (Tr. 25-26). While acknowledging that Baptie had undergone significant surgical intervention to address impairments of her cervical spine in 2019, the ALJ noted that since her alleged onset date of January 13, 2023, Baptie had "sought limited treatment for her impairments." (Tr. 26). The ALJ wrote wrote that the extreme limitations included in Dr. Kellis' opinion were inconsistent with having attended only five physical therapy appointments, concluding on January 24, 2023 with a therapist's note that Baptie felt "pretty good," that she "denied pain to the left side", and that she had "made 'some' progress." (*Id.*). The ALJ further wrote that Dr. Kellis' manipulative limitations, indicated to address "advanced" carpal tunnel syndrome, were inconsistent with moderate EMG findings in her right wrist and mild findings in the left wrist. (*Id.*). The ALJ further articulated that examinations performed by APRN-CNP

14

Kristie Tincher in July and October 2023 returned normal or unremarkable findings, again inconsistent with the extreme limitations opined by Dr. Kellis. (Tr. 27).

In addressing supportability, the ALJ wrote that Dr. Kellis' opinion about exertional limitations were unsupported as Dr. Kellis' examinations "did not show impaired gait or decreased motor strength." (Tr. 26). The ALJ further noted that Dr. Kellis' opinion that Baptie required the ability to alternate positions "at-will"; that pain interferes with concentration, takes her off-task, and causes absenteeism; that she needs to elevate her legs 45-degrees "at will"; and that she will require unscheduled rest periods was unpersuasive because "he failed to provide sufficient support for such severe and extreme limitations." (*Id.*). Because the ALJ addressed both essential factors, substantial evidence supports his determination that Dr. Kellis' opinion was unpersuasive.

Baptie contends that even if the ALJ articulated his findings relating to the April 29. 2024 opinion, the ALJ failed to address additional opinions that Dr. Kellis rendered. (ECF Doc. 8, p. 14). Specifically, Baptie argues that on November 29, 2022, Dr. Kellis offered an opinion that "sitting in front of the computer for any extended period causes Ms. Baptie to experience neck spasms and discomfort" (*Id.* at pp. 12-13, citing Tr. 351); on April 4, 2024, Dr. Kellis opined, "I would agree that she would be a candidate for disability secondary to the multiple issues of health that she does have" (*Id.* at p. 13, citing Tr. 466); and on April 29, 2924, Dr. Kellis wrote that Baptie "cannot ambulate any distance" and concluded that she "was unable to return to gainful employment due to the clinical findings." (*Id.*, citing Tr. 471).

The first suggested "opinion," rendered November 29, 2022, pre-dates Baptie's alleged onset date. Notably, failure to analyze an opinion predating the alleged onset date is not per se reversible error. *Guerra v. Comm'r of Soc. Sec.*, No. 3:22-cv-01056, 2023 WL 3741777, at *9

15

(N.D. Ohio May 10, 2023), *see also Lanthron v. Comm'r of Soc. Sec.*, No. 3:18-cv-689, 2019 WL 1258785, at *5 (N.D. Ohio Jan. 31, 2019), *report and recommendation adopted*, 2019 WL 5729826 (N.D. Ohio Nov. 5, 2019) (concluding that the ALJ's failure to analyze and weigh the opinions of a treating source and a nontreating source, which predated the onset date, was harmless error because "the ALJ weighed and analyzed other medical opinion evidence that fell within the disability period . . . [and] discusse[d] the evidence of record at length[ ]"); *see also Mohssen v. Comm'r of Soc. Sec.*, No. 12-cv-14501, 2013 WL 6094728, at *11 (E.D. Mich. Nov. 20, 2013). Moreover, while medical history is relevant to a disability claim, a claimant's past medical history should not be given more weight than medical evidence from the relevant period of disability. *See Heston*, 245 F.3d at 536; *Lanthron*, 2019 WL 1258785, at *5; *but see O'Malley v. Comm'r of Soc. Sec.*, 210 F. Supp. 3d 909, 915 (S.D. Ohio 2016) (holding that an ALJ's decision was not supported by substantial evidence because the treating physician's pre-onset opinion was consistent with evidence from the relevant time period).

Further, the November 29, 2022 statement by Dr. Kellis is a description of a symptom which does not require separate evaluation under agency regulations. A "medical opinion" is defined as a "statement from a medical source about what [claimants] can still do despite [their] impairment[s] amd whether [they] have one or more impairment-related limitations or restrictions' in their ability to perform the physical, mental, or other demands of work. 20 C.F.R. § 404.1513(a)(2). A mere recitation of an individual's medical history and symptoms is not a proper medical opinion. *Hurst v. Comm'r of Soc. Sec.*, No. 5:23-cv-01722, 2-24 WL 3890905, at *9 (N.D. Ohio Aug. 21, 2024). Because the November 29, 2022 statement merely describes a symptom and activities that may exacerbate that symptom, it does not amount to  a medical opinion.

16

As for the other two "opinions," the ALJ was not required to address these statements made by Dr. Kellis, as the regulations establish that any "[s]tatements on issues reserved to the Commissioner," such as whether a person is or is not "disabled, . . . able to work, or able to perform regular or continuing work," are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i). The ALJ was therefore not required to "provide any analysis about how [he] considered such evidence in his determination or decision." 20 C.F.R. §404.1520b(c); *Walton v. Comm'r of Soc. Sec.*, No. 1:23-cv-1408, 2024 WL 3387300, at *21 (N.D. Ohio June 24, 2024). As the ALJ analyzed all relevant opinions issued by Dr. Kellis, addressing the key factors of supportability and consistency, I cannot order remand on this basis.

**B.      Baptie's physical therapist, Andrew Helber, DPT, did not render an opinion requiring analysis as such by the ALJ.**

Baptie also argues that the ALJ failed to evaluate the opinion of her physical therapist. (ECF Doc. 8,  p. 15). Specifically, Baptie argues that DPT Helber's December 6, 2022 note stating, "[p]ain symptoms remain about the same. It is postural in nature. Prolonged seated and standing activities reproduce pain symptoms. She does do better when she does not have to do desk work," amounted to a medical opinion, and the ALJ's failure to analyze the statement accordingly constituted error. (*Id.*). The Commissioner asserts that the ALJ did not need to assess the opinion of Baptie's physical therapist because it pre-dates her alleged onset date, and because, rather than opining about her capabilities despite her impairment, it is simply a statement concerning the activities that cause her to experience symptoms. (ECF Doc. 9, at p. 14).

The statements in question were written in DPT Helber's notes just over a month before the alleged onset date, so, given the close proximity in time, an evaluation of this would be relevant, if in fact it was a medical opinion. DPT Helber's statements, however, do not meet the

17

definition of a "medical opinion," as it is defined above. The statements in DPT Helber's therapy notes are no more than a description of Baptie's symptoms, and do not amount to a medical opinion. The statements do not opine about Baptie's functional capacity, but merely describe what postures may bring about increased pain, and further do not recommend functional limitations or restrictions. Accordingly, the statements do not rise to the level of a medical opinion, and there was no error when the ALJ did not address the statements as such.

      C.      **The ALJ properly evaluated the state agency reviewing physicians' opinions.**

Finally, Baptie argues that the ALJ improperly relied on the opinions of the state agency reviewing physicians in determining the RFC, as these opinions were based on an incomplete record that did not include Dr. Kellis' April 29, 2024 opinion, his April 2024 examination notes, or Baptie's EMG results. (*Id.* at p. 16). She further avers that the reviewing physicians failed to "evaluate and reconcile any of the other opinions of Dr. Kellis or those of the physical therapist." (*Id.*). In sum, Baptie argues that the ALJ "cherry-picked" select portions of the record in determining the RFC rather than doing a a proper analysis of the entire record. (*Id.* at p. 17).

The Commissioner contends that the ALJ's evaluation of the state agency medical consultant's evaluation was proper, despite the opinion's lack of consideration of the medical opinion and evidence from April 2024, because the ALJ specifically included limitations in the RFC based on the April 2024 evidence. (*Id.*). The Commissioner contends that the ALJ properly evaluated the medical evidence in the record and built a logical and accurate bridge between the evidence and the her RFC finding, and that Baptie's argument that the ALJ "cherry-picked" evidence is no more than an invitation to reweigh the evidence. (*Id.*). Accordingly, the Commissioner argues, substantial evidence supports the ALJ's RFC finding and the decision should be affirmed. (*Id.* at p. 17).

18

In evaluating the medical opinions of the state agency reviewing physicians, the ALJ wrote:

> Their medical findings are persuasive because they are supported by the objective medical evidence recounted above while adequately considering the claimant's subjective complaints. Their medical findings are persuasive because they are consistent with the limited course of treatment for any medically determinable physical impairment. However, the medical consultants did not have the benefit of reviewing the more recent medical evidence of record from April, 2024 including the April 10, 2024 EMG study of her arms and hands. As such to adequately account for the claimant's impairments of the arms/hands, the undersigned adds frequent reaching, handling, and fingering as opposed to comstant reaching, handling, and fingering. The undersigned declines to reduce reaching, handling, and fingering to only occasional because the EMG contained 'moderate' and 'mild' findings, and the claimant testified that the current treatment for her hands consists of only exercises and a brace on the left.

(Tr. 28).

"[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Jones v. Colvin*, No. 5:13CV1781, 2014 WL 459812, at *3 (N.D. Ohio Sept. 12, 2014), quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). It is proper for the ALJ to rely on the state agency opinions, so long as the ALJ takes into account subsequent evidence and any relevant changes in the claimant's condition. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *Brown v. Saul*, No. 1:18-CV-1463, 2019 WL 4039055, at *6 (N.D. Ohio Aug. 27, 2019) ("If an ALJ's decision includes a discussion of medical opinions or other evidence post-dating the State agency opinions, courts will generally find no error as the ALJ adequately reviewed the complete case record.") (collecting cases).

There is no error in relying on state agency findings where, as here, the ALJ considered medical opinions and other evidence post-dating the state agency opinions. *See Young v. Comm'r of Soc. Sec.* No. 1:23-cv-01435, 2024 WL 3387315, at *18 (N.D. Ohio June 18, 2024). While

19

Baptie complains that the ALJ found the state agency reviewing physicians' opinions persuasive despite the opinions pre-dating certain medical opinions and evidence, the ALJ explicitly addressed and added specific limitations to the RFC directly reflecting that evidence. It is clear that the ALJ considered the subsequent evidence and met his obligations of reviewing the complete case record. Thus, there was substantial evidence supporting the ALJ's RFC finding, and he did not rely strictly on "cherry-picked" evidence pre-dating April 2024. The ALJ's determination of Baptie's RFC was based on a thorough review of the entire medical record. Accoridngly, I find no error in the ALJ's assessment of the state agency reviewing physicians' opinions or in the determination of Baptie's RFC.

## VII.  Conclusion

Because the ALJ applied proper legal standards when evaluating the opinion of Dr. Kellis and the state agency reviewing physicians, and correctly assessed that other statements contained in Dr. Kellis' examination notes and the notes of DPT Helber to not be "medical opinions," I affirm the Commissioner's final decision denying Baptie's application for DIB.

Dated: March 27, 2026

Reuben J. Sheperd
United States Magistrate Judge

20